STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

IN RE:

PEAK TAHOE LLC,

        Debtor.

_____/

Case No. BK-23-50483-hlb

(Chapter 11)

Hearing Date:   TBD
Hearing Time:   TBD

**<u>DEBTOR'S DISCLOSURE STATEMENT</u>**

Dated:          October 16, 2023

Filed by:       STEPHEN R. HARRIS, ESQ.
                NORMA GUARIGLIA, ESQ.
                HARRIS LAW PRACTICE LLC
                850 E. Patriot Blvd., Suite F
                Reno, Nevada 89511
                Telephone: (775) 786-7600

                Attorneys for Debtor PEAK TAHOE LLC, a Nevada limited liability company

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

1

## I. INTRODUCTION

PEAK TAHOE LLC, a Nevada limited liability company, Debtor and Debtor-in-Possession ("Debtor") in the above-captioned Chapter 11 case, provides herewith the information contained in this DEBTOR'S DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") to all known creditors and other parties in interest of the Debtor in order to disclose that information deemed material, important, and necessary to the creditors to arrive at a reasonably informed decision in exercising their rights to vote for acceptance of the Plan of Reorganization.

Together with this DEBTOR'S DISCLOSURE STATEMENT, each creditor should also have received a copy of the DEBTOR'S PLAN OF REORGANIZATION ("PLAN"), a form Ballot on which creditors and other parties in interest who are entitled to vote may cast their respective vote, and a copy of the ORDER APPROVING DEBTOR'S DISCLOSURE STATEMENT which indicates that the Bankruptcy Court has approved this DEBTOR'S DISCLOSURE STATEMENT for circulation to creditors in that it contains information of a kind and of sufficient detail, as far as its reasonably practicable, to enable creditors and other parties in interest to make an informed decision about the PLAN. As indicated in the Instructions accompanying the Ballot, which is the form on which you may cast your vote to accept or reject the PLAN, the Ballot must be mailed to Debtor's counsel in time to ensure that your Ballot will be received by the due date. Ballots received after the due date may not be counted.

You are urged to carefully read this DEBTOR'S DISCLOSURE STATEMENT and the DEBTOR'S PLAN OF REORGANIZATION before deciding to accept or reject the PLAN. Particular attention should be directed to the provisions of the PLAN affecting your rights as well as the Liquidation Analysis which describes the results which would be obtained in the event the Debtor's business is discontinued and its assets liquidated.

## II. THE CHAPTER 11 CONFIRMATION PROCESS

The Chapter 11 confirmation process is governed, in large part, by the Bankruptcy Code. Under the Bankruptcy Code, to be confirmed, the DEBTOR'S PLAN OF REORGANIZATION must be accepted by at least one (1) Class of Creditors whose claims against the Debtor will be "impaired" under the PLAN. Claimants who are scheduled to receive full payment on their

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

2

Claims without modification or changes to their right to payment are deemed to have accepted the PLAN and do not vote. Only Creditors whose Claims are "impaired" or their right to payment terms is modified or changed are entitled to vote in favor of accepting or rejecting the PLAN. A Class of claims is "impaired" if the amount to be paid to the Class provides the Claimants in that Class with less than full payment of the Allowed Claims in that Class or the terms for repayment are extended beyond the contractual due date or some other contractual terms are changed. Acceptance by such Class requires that at least one-half of the Creditors in the Class who cast accepting votes on the PLAN and hold at least two-thirds of the total dollar amount of the Claims in that Class casting votes on the PLAN.

### III. DISCLAIMER

**NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN OF REORGANIZATION WHICH ARE NOT CONTAINED HEREIN OR IN THE PLAN OF REORGANIZATION SHOULD NOT BE RELIED ON BY ANY CREDITOR OR OTHER PARTY IN INTEREST. ALTHOUGH THE FINANCIAL INFORMATION CONTAINED HEREIN IS BELIEVED TO BE ACCURATE, IT HAS NOT BEEN SUBJECTED TO ANY CERTIFIED AUDIT AND IS NOT WARRANTED OR REPRESENTED TO BE ERROR FREE.**

### IV. DEBTOR'S FINANCIAL HISTORY

PEAK TAHOE LLC is a Nevada limited liability company formed on January 4, 2021. The Debtor is a single asset real estate debtor as that term is defined under 11 U.S.C. §101(51B).

The Debtor was formed by Sheba Development, LLC, a California limited liability company, to develop forty-one (41) luxury residences that overlook Lake Tahoe on the Nevada side of South Lake Tahoe, specifically, 323 Tramway Drive, Stateline, Nevada (the "Project"). The Debtor purchased the development Project from Bank of America as an REO, and at the purchase time, there was an existing 4-story concrete shell and frame. In December 2020, the

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

3

Debtor secured a core and shell permit from Douglas County and started the process of modifying the interior plans. In January 2021, the Debtor began working with BSP of Finance, LLC, also known as Benefit Street Partners ("BSP"), for a construction loan. On July 26, 2021, the construction loan closed, with a two (2) year loan term and one (1) year extension if needed. Upon close of escrow, the Debtor immediately ordered the longer lead items such as roof trusses, windows, and doors. Supply chain issues created by the COVID – 19 Pandemic were still affecting the market, with items such as electrical switch gear were taking twelve (12) to eighteen (18) months to be delivered. Tahoe Area Regional Planning Agency (TARPA) requires all outside construction to cease between the months of October 15th through May 15th each year to protect Lake Tahoe from adverse runoff. During the construction downtime, the Debtor used the time to continue working on plans and pricing improvements while waiting for materials to arrive. BSP funded construction draw requests for October 2021, November 2021 and December 2021. For the year 2022, BSP only funded six (6) out of twelve (12) draws requested, and four (4) draws were funded out of the Debtor's equity in the Project, with the remaining two (2) draws for 2022 left unfunded. BSP funded the construction draw for January 2022, and the Debtor funded the draw requests for the months of February 2022, March 2022 and April 2022. On April 27, 2022, BSP demanded that by July 1, 2022, seventy-five percent (75%) of the general contract ("GC") be in subcontracts (original loan agreement allowed it to be a cost plus contract with allowances). While the general contractor was working on getting the subcontracts in order, BSP demanded to stop the funding until those were in place. Subcontractor bids came in higher in some areas and lower in others. The Debtor adjusted its budget, however it was able to maintain the original overall budget. The Debtor was able to balance its budget by redirecting money from the developer's contingency to the appropriate contracts budgets. BSP contended the shifting of line items was a default and did not want changes to be made. By BSP disallowing the line item changes, the budget would need to increase and additional funding required. BSP stated the Debtor should fund the construction draws out of borrower equity. On May 20, 2022, BSP's counsel sent a letter to the Debtor stating that there were technical defaults related to the Project and loan, and that BSP would cease funding until the defaults were corrected. The Debtor funded

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

the May 2022 draw and BSP funded the June 2022 and July 2022 draws. On July 7, 2022, BSP's counsel sent another letter to the Debtor citing the same defaults referenced in its May 20, 2022 letter. On June 26, 2022, BSP's counsel sent a letter to the Debtor notifying the Debtor that BSP was going to set off the Debtor's reserve funds in the amount of $2,270,757.25. BSP used these funds to pay itself an "exit fee", although there was no exit from the Project. On August 29, 2022, while BSP was threatening foreclosure, BSP proposed a First Amendment, which memorialized its "exit fee" and taking of funds. The BSP demands in the First Amendment included the following: 1) The building shell would be completed by November 1, 2022; 2) The original exit fee of 5% would be doubled to 10%;  3) The loan maturity would be changed to December 9, 2023; 4) Debtor to acknowledge BSP will not fund draws 5,6,7, and 8 as previously agreed to in default letter dated May 20, 2022; 5) Debtor agreeing to pay immediately $250,000 in additional interest reserves since the reserve was now depleted by BSP actions (set off); 6) Debtor agreeing to fund a new interest reserve of $1,500,000 by May 1, 2023, knowing that Debtor's reserves were depleted due to the exit fee; and 7) BSP dropped the demand for a Surebuild policy and said it was unnecessary.

In less than 12-months of the loan funding, the Debtor had funded in good faith $2.2 million in additional cash after the close of escrow, $1,050,302.72 in the form of draws 5, 6, 7, and 8, which BSP then refused to reimburse, and $250,000 in loan interest payments made after the reserves were taken. On August 29, 2022, Debtor signed the First Amendment with BSP, and BSP funded the August 2022, September 2022 and October 2022 draws. In November 2022, BSP decided they would not reimburse the Debtor for the draws it funded while correcting the defaults. In the meantime, the Debtor had funded the draws for the months of February 2022, March 2022, April 2022 and May 2022, with draws funded by the Debtor totaling $1,050,302.72. BSP refused to fund the November 2022 and December 2022 construction draws, and in January 2023, SMC Construction, as the Project's General Contractor, pulled off the job and ceased working. On March 1, 2023, BSP sent a letter to the Debtor citing additional defaults including the "notice of termination from SMC", which was of course based on BSP's non-payment of construction draws.

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

5

On June 21, 2023, BSP recorded a Notice of Trustee's Sale in Douglas County, Nevada, which set a foreclosure sale of the Debtor's real property to take place on July 19, 2023. The Debtor has significant equity in the Property, and filed this Chapter 11 case to stay the foreclosure proceeding and give it a breathing spell to either refinance the Property through a new lender and complete the Project, or sell, or joint venture the Property.

## V. DESCRIPTION AND VALUATION OF ASSETS

The Debtor's assets which existed on the Petition Date, are generally described as follows:

| Description | Est. Market Value |
|---|---|
| Real property located at 323 Tramway Drive, Stateline, NV (APNS: 1319-30-544-000 thru 1319-30-544-054) – "as is value" | $43,300,000.00 |
| PNC Bank Checking Account | $3,219.59 |
| Flagstar Bank Account | $0.00 |
| Raw Materials (fire sprinkler piping) | $125,521.60 |
| HVAC Equipment | $987,000.00 |
| Raw Materials (masonry rock) | $75,000.00 |

## VI. SIGNIFICANT POST-PETITION EVENTS

The following significant events have occurred post-petition:

The Debtor obtained Court approval to employ Harris Law Practice LLC as its general bankruptcy counsel.

The Debtor is in discussions with a new lender to refinance the Project and secure construction financing to complete the Project. The Debtor, together with the proposed new lender and the Debtor's member Sheba Development, LLC, would form a single person Nevada limited liability company for the joint venture. The potential new lender and joint venture partner will contribute approximately $6,400,000 to the newly formed entity and will simultaneously secure construction financing to finish the Project. The new lender's capital contribution shall receive a cumulative preferred annual payment of twenty percent (20%) per annum. Sheba Development, LLC would sell the Property to the newly formed entity and will contribute a credit of $10,800,000 in the form of equity. The proposed new lender will be responsible for all future capital contributions for the construction and development of the Project and operation of the

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

6

newly formed entity. The new lender will use reasonable efforts to arrange a third-party construction financing for development of the Project consistent with the following:

    (i)    In an amount of not less than (a) $50,000,000, or (b) total capital needed to remove liens, refinance existing senior construction debt (including all fees and penalties) and complete the construction of the Project.

    (ii)    With an interest rate of approximately SOFR + 7%;

    (iii)    With a commercially reasonable origination fee; and

    (iv)    Acceptable to proposed new lender in all respects.

The proposed new lender, through another entity, shall prepare the Project to accept EB-5 financing ("EB-S Capital"), which shall be invested by Peak Tahoe EB-5 Fund, LP ("EB-5 Capital Member"). Total proceeds shall not exceed $28,000,000. EB-5 Capital shall receive a cumulative preferred annual payment of 8% per annum when used in lieu of, or to pay down, the Construction Loan, and a cumulative preferred annual payment of 20% when replacing the proposed new lender's contribution.

    With respect to any future financing and guaranties, the proposed new lender (or creditworthy affiliates thereof) shall provide guaranties for (i) customary "bad boy" carve-outs, (ii) construction completion guaranties, and (iii) environmental indemnities, to the extent required, and subject to the proposed new lender's review and approval of the documents. Neither Member nor their affiliates shall be required to provide a repayment guaranty. Creditworthy affiliates of Sheba will execute a customary contribution agreement with respect to liability under the guaranties resulting from the acts or omissions of Sheba or its affiliates.

    There are additional terms between the parties with respect to the proposed refinancing, however the Debtor and proposed new lender agreed the Term Sheet would be confidential. Debtor committed in the non-binding Term Sheet recitations above to negotiate exclusively with the new lender for a period of thirty (30) days to arrive at a duly executed Joint Venture agreement. Debtor believes it is in the best interests of its creditors to do the deal with the new lender, given its creditworthiness and experience.

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

7

# VII. ADMINISTRATIVE AND UNCLASSIFIED CLAIMS

## ADMINISTRATIVE CLAIMS:

All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtor's estate, all allowances, including professional fees and costs, approved by the Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on or before the Effective Date of the Plan. The holders of these claims include the attorneys and accountants for the Debtor, unpaid post-petition accounts payable (if any), and all fees to be paid to the Office of the United States Trustee. The estimated administrative expenses for the Debtor's reorganization proceeding are from $75,000.00 to $150,000.00, and consist of the following:

| | |
|---|---|
| $0.00 | Trustees fees that are owed the U.S. Trustee's Office for the applicable quarters of 2023 prior to the Confirmation Date [payment is anticipated to be made when due]. |
| $75,000.00 to $150,000.00 | Estimated unpaid professional fees for the Debtor's general bankruptcy attorneys, Stephen R. Harris, Esq. and Norma Guariglia, Esq., of HARRIS LAW PRACTICE LLC, calculated as of the Confirmation Date. |
| $0.00 | Post-petition accounts payable with [all post-petition administrative expenses are expected to be paid in full in the normal course of business prior to the Confirmation Date]. |

Professional fees, both legal and accounting, shall continue to accrue up through and subsequent to the Confirmation Date, with final amounts owing subject to Court approval.

## UNCLASSIFIED PRIORITY CLAIMS:

1. **Description**. The Debtor's priority claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|---|---|---|---|
| Douglas County Treasurer | $15,384.53 | $0.00 | $15,384.53 |
| Internal Revenue Service | $10,080.00 | $10,080.00 | Disputed |

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

| | | | |
|---|---|---|---|
| TOTAL | $25,464.53 | $10,080.00 | $15,384.53 |

In the event any late-filed priority claims are deemed allowed before the Plan confirmation hearing, the treatment and disposition of the unclassified priority claims, now totaling $15,384.53, will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular creditor's allowed claim being paid by the Debtor. All unclassified priority creditors shall be paid 100% of their allowed claim amount, with statutory interest thereon, on or before the Effective Date of the Plan. In the event the Debtor fails to make the payments as set forth hereinabove, the allowed priority creditors, if any, shall have the right to proceed with any administrative remedies available to them, fifteen (15) days after written notice of default has been given to the Debtor and its attorney, Stephen R. Harris, Esq.

### VIII. CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, claims against the estate have been divided into the following classifications for purposes of administration and voting on the Plan:

1.  **CLASS 1 SECURED CLAIM [BSP OF FINANCE, LLC]**:

This Class consists of all allowed secured claim of BSP of Finance, LLC, in the amount of $15,506,662.28, calculated as of the Petition Date and is secured by a first priority deed of trust against the real property located at 323 Tramway Drive, Stateline, Nevada ("Property").

2.  **CLASS 2 CLAIMS [SECURED CLAIMS]**:

This Class consists of the allowed secured claims, consisting of claimants with recorded mechanic's liens against the Debtor's real property located at 323 Tramway Drive, Stateline, Nevada. The Class 2 Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Alcal Specialty Contracting, Inc. | $40,629.20 | $42,054.20 | Disputed |
| Eliot Building Company | $426,905.88 | $0.00 | $426,905.88 |
| First Service Residential (Tahoe Village Homeowner's Association | $80,754.34 | $80,262.00 | $80,262.00 |

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

| Creditor | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---:|---:|---:|
| Kingsbury General Improvement District | $17,546.65 | $0.00 | $17,546.65 |
| Mt. Rose Hearing & Air Conditioning, Inc. | $163,558.70 | $0.00 | Partially Disputed |
| Richard Joseph Construction, Inc. | $251,585.80 | $0.00 | Disputed |
| Safway Services, LLC | $145,663.67 | $0.00 | $145,663.67 |
| SMC Construction Co. | $553,285.26 | $0.00 | $553,285.26 |
| Total | $1,679,929.50 | $122,316.20 | $1,223,663.46 |

3.  **CLASS 3 CLAIMS [GENERAL UNSECURED CLAIMS]**:

This Class consists of the general unsecured claims against the Debtor. The Class 3 General Unsecured Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---:|---:|---:|
| Balbec Capital | $127,592.34 | $0.00 | Disputed |
| California Mantle | $3,840.00 | $0.00 | $3,840.00 |
| Cheek Construction | $571.25 | $0.00 | $571.25 |
| DSS Development Solutions | $1,857.92 | $0.00 | $1,857.92 |
| High Sierra Fire | $38,131.97 | $0.00 | Disputed |
| Justin Wilson Construction* | $90,165.10 | $0.00 | $90,165.10 |
| Keenan Hopkins Suder & Stowell Contractors, Inc. | $198,155.27 | $0.00 | $198,155.27 |
| Kemper Masonry | $3,750.00 | $0.00 | Disputed |
| Otis Elevator | $6,957.72 | $0.00 | $6,957.72 |
| Providence Electric Inc. | $72,055.00 | $0.00 | Disputed |
| Sierra Pacific Windows | $123,096.37 | $123,096.37 | Disputed |
| Sierra Single Ply, Inc.* | $85,708.04 | $85,708.04 | $85,708.04 |
| Slobogin Steel & Construction LLC* | $30,629.28 | $0.00 | $30,629.28 |
| Universal Engineering | $9,178.50 | $0.00 | $9,178.50 |
| Vertical Iron Works | $58,074.00 | $0.00 | $58,074.00 |
| Western Water Features | $1,487.50 | $0.00 | Disputed |

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

10

| Total | $851,250.26 | $208,804.41 | $485,137.08 |

General Unsecured Claims listed hereinabove with an asterisk (*) are claimants that recorded a mechanic's lien within ninety (90) days of the Debtor's chapter 11 filing, and therefore, the lien is potentially avoidable pursuant to 11 U.S.C. §547. The Debtor listed these claims as unsecured on its filed Schedules of Assets and Liabilities (*See* ECF No. 16) and Amended Schedules of Assets and Liabilities (*See* ECF No 36).

4. **CLASS 4 EQUITY INTERESTS OF DEBTOR**: This Class 4 consists of the Member's equity interests in PEAK TAHOE LLC, specifically: Sheba Development, LLC 99.5% member's interest and The Peak Tahoe L.L.C. 0.5% member's interest.

## IX. TREATMENT OF CLASSES

1. **CLASS 1 SECURED CLAIM [BSP OF FINANCE, LLC]**: The Class 1 Allowed claim in the total amount of $15,506,662.28, calculated as of the Petition Date, shall be paid in full upon any sale of the Debtor's real property or refinance of same, whichever occurs first in time, on or before the Effective Date of the Plan. Debtor shall litigate and contest unreasonable fees, costs, or charges provided for under the parties' agreement or State statute under which such claim arose, pursuant to §506(b). Debtor also reserves the right to contest and litigate the "second exit fee" and the minimum interest charges. Accordingly, the Class 1 Allowed Secured Claim is unimpaired under the PLAN.

2. **CLASS 2 CLAIMS [SECURED CLAIMS]**: The Class 2 Allowed secured claims totaling $1,223,663.46, calculated as of the Petition Date, shall be paid in full upon any sale of the Debtor's real property or refinance of same, whichever occurs first in time, on or before the Effective Date of the Plan. Debtor shall litigate and contest unreasonable fees, costs, or charges provided for under the parties' agreement or State statute under which such claim arose, pursuant to §506(b). Accordingly, the Class 2 Allowed secured claims are unimpaired under the PLAN.

3. **CLASS 3 CLAIMS [GENERAL UNSECURED CLAIMS]:** The Class 3 Allowed general unsecured claims totaling $485,137.08, calculated as of the Petition Date, shall be paid in full upon any sale of the Debtor's real property or refinance of same, whichever occurs

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

11

first in time, on or before the Effective Date of the Plan. Debtor shall litigate and contest unreasonable fees, costs, or charges provided for under the parties' agreement or State statute under which such claim arose, pursuant to §506(b). Accordingly, the Class 3 Allowed general unsecured claims are <u>unimpaired</u> under the PLAN.

4. **CLASS 4 EQUITY INTERESTS OF DEBTOR:** The equity interests of the members of PEAK TAHOE LLC existing on the Petition Date shall remain unchanged. Accordingly, the Class 4 equity interests of the Debtor are <u>unimpaired</u> under the Plan.

### X. BAR DATE FOR FILING CLAIM

The bar date for filing a proof of claim in this case is November 20, 2023, for all creditors (except a governmental unit). The bar date for objecting to claims will be sixty (60) days after the date on which the PLAN is confirmed by the Court. All priority unsecured and general unsecured claims which are listed as disputed in the PLAN or who believe that the amounts listed in the PLAN are incorrect, shall file proofs of claim in this case by the bar date set forth above. Failure to file a proof of claim by a disputed claimant or a claimant who disagrees with the amount listed in the PLAN within such time period will result in the amount listed in the PLAN being established as the amount owing to such creditor, and such creditor will participate in the PLAN, based upon its claim listed in the PLAN.

### XI. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

1. **Funding of Proposed Plan Payments**

The Debtor shall fund the proposed Plan payments from the sale, or refinance of the Debtor's Property. The Debtor's Property has equity in excess of any purported secured claims; thus, the Debtor expects to have sufficient funds with which to make the required Plan payments, after refinance or sale/joint venture. Debtor estimates that its equity in the Project exceeds $12,000,000.

2. **Post-Confirmation Default**

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel. The Debtor shall thereafter have fifteen (15) business days from receipt of said notice

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

12

in which to cure the default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to foreclose upon any collateral (if a secured creditor) or take other appropriate action. The Debtor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal of the same is in the best interest of creditors.

   3.  **Professionals' Fees**

After the Confirmation Date of the Plan, the Debtor and any other professional, such as Debtor's general bankruptcy counsel, any special purpose counsel or accountants, will not be required to apply to the Court for compensation for services rendered post-confirmation. Post-confirmation compensation of the Debtor's professionals shall be at their normal rate(s) and customary cost charges.

   4.  **Distribution**

All cash proceeds shall be distributed in the foregoing manner except amounts necessary to pay disputed claims against the Debtor in the event they are allowed, which shall be held in a reserve and paid as such claims are determined by agreement between the parties or as are judicially determined.

   5.  **Taxes**

Unless otherwise provided in the Plan, all taxes are paid current and there are no tax liens on real or personal property owned by the Debtor.

   **XII. PROVISIONS GOVERNING DISTRIBUTION AND DISCHARGE**

   1.  <u>THE DISBURSING AGENT</u>.

PEAK TAHOE LLC, in its capacity as Debtor and Debtor-in-Possession, is ultimately responsible for making all distributions pursuant to the Plan. To assist it in discharging those responsibilities, Debtor shall select a depository institution authorized by the Court for all funds which are to be sequestered for claims of creditors and ultimately distributed to creditors holding allowed claims.

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

13

2.      UNCLAIMED DISTRIBUTIONS.

Any property to be distributed pursuant to the Plan, if not claimed by the distributee within one (1) year after the payment, shall be returned to the Debtor.

3.      EFFECT OF CONFIRMATION.

Upon confirmation and performance of the Plan, PEAK TAHOE LLC shall be discharged from any debt that arose before the date of Confirmation, and any debt of a kind specified in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, to the full extent permitted by Bankruptcy Code § 1141(d). In addition, pending execution of the Plan, and unless the Court has otherwise expressly ordered or the Plan otherwise expressly provides, all creditors and parties in interest shall be stayed from proceeding against the assets of PEAK TAHOE LLC, including stay of default proceedings.

4.      EXCULPATION.

Neither the Unsecured Creditors' Committee, if any, nor Debtor nor any of their respective members, officers, directors, employees, representatives, professionals or agents, will have or incur any liability to any Creditor for any act or omission in connection with or arising out of the Reorganization Case, including, without limitation, prosecuting confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the monies to be distributed under this Plan, except for breach of fiduciary duty, gross negligence, willful misconduct or fraud.

## XIII. POST-CONFIRMATION INJUNCTION

No entity may commence, continue or assert any claim, counterclaim, crossclaim, affirmative defense, defense, set off, recoupment, or any action of any kind or nature (collectively "Potential Actions") against Debtor. Confirmation of the Plan shall constitute a permanent injunction against and irrevocable release of any and all Potential Actions. Confirmation of the PLAN shall constitute a permanent injunction against and irrevocable release of any and all Potential Actions.

## XIV. EXECUTORY CONTRACTS and LEASES

Reservation of Rights. The Debtor reserves the right to assume or reject, pursuant to §365 of the Code, any executory contract or unexpired lease not assumed or rejected prior to the

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

Confirmation Date. All executory contracts and unexpired leases not specifically assumed or rejected as of the Confirmation Date or as to which an application to reject shall not be pending on the Confirmation Date shall be deemed rejected by the Debtor. Debtor hereby assumes or rejects its leases and executory contracts as set forth below: None.

### XV. **MISCELLANEOUS PROVISIONS**

Notice. Any notice described in or required by the terms of this PLAN or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the date of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

> The Debtor, addressed to:
> STEPHEN R. HARRIS, ESQ.
> NORMA GUARGILIA, ESQ.
> HARRIS LAW PRACTICE LLC
> 850 E. Patriot Blvd., Suite F
> Reno, NV 89511

Headings. The headings used herein are inserted for convenience only and neither constitute a portion of the PLAN nor in any manner affect the construction of the provisions of the PLAN.

Severability. Should any provision of this Plan be determined to be unenforceable following the Effective date, such determination shall in no way limit or affect the enforceability of any and all other provisions of this Plan.

Governing Law. Except to the extent that the Code or other applicable federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed in accordance with the laws of the State of Nevada.

Successors and Assigns. The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person.

Designation of Managers. Jonathan Z. Mougharbel, as Trustee, Managing Member of Sheba Development, LLC, Member of The Peak Tahoe, L.L.C., a Delaware limited liability company, Managing Member for Peak Tahoe LLC, shall continue to serve in his current position,

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

15

with no compensation.

## XVI. PROCEDURES FOR RESOLVING CONTESTED CLAIMS

<u>Claims Objections</u>.  Objections to Claims shall be filed with the Court and served upon each holder of a Claim to which objection is made no later than sixty (60) days after the Confirmation Date.

<u>Payment Procedures</u>.  Payments to the holder of a Claim to which objection has been made that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the PLAN with respect to the Class of Creditors to which the holder of such an Allowed Claim belongs.  However, interest, if any, on any funds reserved for a contested claim shall inure to the benefit of the holder of such an Allowed Claim.

<u>Avoidance Actions</u>.  To the extent appropriate, the Debtor shall have the right to bring any and all avoidance actions, the same to be commenced with 90 days of the Confirmation date. Proceeds of all avoidance actions shall vest in the Debtor pursuant to 11 U.S.C. §1141.

## XVII. CONFIRMATION REQUEST

The Debtor requests that the PLAN be confirmed in accordance with the provisions of §1129(a) and/or §1129(b) of the Code.

## XVIII. RETENTION OF JURISDICTION

Notwithstanding confirmation of this PLAN, the Court will retain jurisdiction for the following purposes, and each of them:

1. The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

2. The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this PLAN.

3. The Court will retain jurisdiction to facilitate the consummation of this PLAN by entering, consistent with the provisions of this PLAN, any further necessary or appropriate

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

16

order(s) regarding the enforcement of this PLAN and any provision(s) thereof.

4. The Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this PLAN, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtor may deem it appropriate to initiate and prosecute in aid of its reorganization.

5. The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

6. The Court will retain jurisdiction to enter an appropriate final decree, and any interim order(s), in any adversary proceedings which may be initiated during this Chapter 11 proceeding.

## XIX. FEASIBILITY OF DEBTOR'S PLAN

Debtor believes the PLAN is feasible because the equity in its Property exceeds the amount of total secured and unsecured claims, including those that are disputed.

## XX. LIQUIDATION ANALYSIS

Debtor is proposing a PLAN wherein the Debtor's real property construction project will be refinanced, with enough monies available to pay all allowed creditor claims, or alternatively, a liquidating PLAN where its real property assets will likely be liquidated by the Debtor.

The PLAN must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the debtor filed a Chapter 7 petition instead.

In a Chapter 7 case, the general rule is that the debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims. A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons. First, the Debtor's Plan proposes to pay all allowed unsecured creditors pro-rata, with interest. Second,

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

17

in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all money disbursed, 10% on any amount over $5,000 but less than $1,000,000, 5% on all amounts over $1,000,000 but less than $3,000,000, and reasonable compensation not to exceed 3% on any amount over $3,000,000, thus diminishing monies available for payment to unsecured creditors.  In a Chapter 7 case, the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

   Debtor's Plan proposes payment in full to all allowed creditors, and said creditors would not receive more from a liquidation by a Chapter 7 trustee, as a Chapter 7 trustee would be entitled to compensation from the bankruptcy estate based on creditor distributions. Thus, if there were a liquidation of assets, Debtor believes its creditors would not receive more on their claims than is being proposed in Debtor's Plan.

Respectfully submitted this 16th day of October 2023.

             STEPHEN R. HARRIS, ESQ.
             HARRIS LAW PRACTICE LLC

             */s/ Stephen R. Harris*
             ―――――――――――――――
             Attorney for Debtor

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

18

**VERIFICATION**

I, JONATHAN Z. MOUGHARBEL, as Trustee, Managing Member of Debtor PEAK TAHOE LLC, declare under penalty of perjury that I have read the foregoing DEBTOR'S DISCLOSURE STATEMENT, and that the contents contained therein are true and correct to the best of my knowledge, information and belief.

DATED this 16th day of October, 2023.

_____
Jonathan Z. Mougharbel, as Trustee, Managing Member of Sheba Development, LLC, Member of The Peak Tahoe, L.L.C., a Delaware limited liability company, Managing Member for Peak Tahoe LLC

HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Suite F
Reno, NV 89511
775 786 7600

19