STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No. BK-23-50483-hlb |
| | (Chapter 11) |
| PEAK TAHOE LLC, | Hearing Date:  TBD |
| | Hearing Time: TBD |
| Debtor. | |
| _____/ | |

## **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

Dated:            November 22, 2023

Filed by:         STEPHEN R. HARRIS, ESQ.
                  NORMA GUARIGLIA, ESQ.
                  HARRIS LAW PRACTICE LLC
                  850 E. Patriot Blvd., Suite F
                  Reno, Nevada 89511
                  Telephone: (775) 786-7600

                  Attorneys for PEAK TAHOE LLC,
                  a Nevada limited liability company

**PEAK TAHOE LLC, a Nevada limited liability company,** Debtor and Debtor-in-Possession ("Debtor") in the above-captioned Chapter 11 reorganization case, pursuant to 11 U.S.C. § 1121(a), hereby proposes the following **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**, by and through its attorney undersigned and named herein, and requests confirmation thereof pursuant to the provisions of 11 U.S.C. § 1129(a) and (b).

**I.**

**<u>INTRODUCTION</u>**

This DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION is proposed by PEAK TAHOE LLC, a Nevada limited liability company, Debtor and Debtor-in-Possession herein, for the resolution of the Debtor's outstanding creditor obligations.  DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (the "PLAN") is offered pursuant to Chapter 11 of Title 11 of the United States Code and should be read in conjunction with the proposed DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") concerning this Debtor that will be approved by the United States Bankruptcy Court, after notice and hearing.

Along with this proposed Plan, creditors will receive a Disclosure Statement which has been approved by the United States Bankruptcy Court.  The Court has determined that the Disclosure Statement is adequate to enable creditors to make an informed judgment on whether to accept or reject the Plan.  The Disclosure Statement fully sets forth the Debtor's background information, an analysis of the Debtor's financial position and a summary of this Plan.  The Debtor has not authorized any statement or representation, such as the value of its property or the amount of its creditors' claims, that is not contained in the Court approved Disclosure Statement.

Information as to the procedures relating to approval, confirmation and consummation of the Plan may be obtained from STEPHEN R. HARRIS, ESQ. and NORMA GUARIGLIA, ESQ. of the law firm HARRIS LAW PRACTICE LLC, attorneys for the Debtor, upon written request.

THE PROVISIONS OF THE CONFIRMED PLAN WILL LEGALLY BIND THE DEBTOR AND ITS CREDITORS, REGARDLESS OF WHETHER THEY HAVE FILED CLAIMS OR HAVE ACCEPTED THE PLAN.  Creditors should thoroughly review both the Plan

and the Disclosure Statement before determining whether to accept or reject the proposed Plan.

**II.**
**DEFINITIONS**
**SCOPE OF DEFINITIONS**

For the purposes of this DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION, all capitalized terms and otherwise defined terms shall have the meanings assigned to them in this Article II. Whenever the context requires, such terms shall include the plural number as well as the singular and the female and/or masculine gender as well as the neuter.

1.    "ADMINISTRATIVE CLAIM." This term shall refer to and mean every claim that is entitled to allowance under Section 503(b) of the Bankruptcy Code or otherwise entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, arising prior to the Effective Date, including, without limitation: **(a)** any actual, necessary expense preserving the Estate, including, without limitation, expenses necessary or appropriate to carry out, facilitate, or effectuate this Plan; **(b)** any amount required to be paid under Section 365(b) of the Bankruptcy Code in connection with the curing of defaults under executory contracts or unexpired leases; and **(c)** all allowances, including professional fees and costs, approved by the Bankruptcy Court for the Receiver and his professionals, and the Debtor's professionals and members of and professionals employed by the Unsecured Creditors' Committee, if any.

2.    "ALLOWED ADMINISTRATIVE CLAIM" shall mean an Administrative Claim: **(a)** as to which no objection has been filed or, if an objection has been filed, such objection has been resolved by the allowance of such Administrative Claim by a Final Order; **(b)** which requires payment in the ordinary course of the business of the Debtor and as to which there is no order of the Bankruptcy Court in effect which prohibits any such payment; or **(c)** which requires payment pursuant to a Final Order.

3.    "ALLOWED CLAIM" or "ALLOWED INTEREST" shall mean claims against or interest in the Debtor to the extent that--

(a) Proof of claim or interest was–

(I)  timely filed;

(ii)  deemed filed, if such claim or interest appears in the schedules filed herein,

unless such claim or interest is scheduled as disputed, contingent, or unliquidated; or

(iii) late filed–

   (I) with leave of the Bankruptcy Court; or

   (II) without objection by the Debtor-in-Possession within a time fixed by the Bankruptcy Court; and

(b) (I) the Debtor-in-Possession does not file an objection within a time fixed by the Bankruptcy Court; or

(ii) the claim or interest is allowed by a Final Order; or

(iii) the claim or interest is allowed under this PLAN.

4.    "ALLOWED PRIORITY CLAIM" shall mean a Priority Claim which is an Allowed Claim.

5.    "ALLOWED SECURED CLAIM" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Code, to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such set-off, as the case may be.

6.    "ALLOWED SUBORDINATED CLAIM" shall mean an Allowed Claim arising from any Indebtedness evidenced by or related to the claim of a Subordinated Creditor.

7.    "DEFINITION OF THE BALLOT" shall mean the Ballot(s) for accepting or rejecting this Plan in a form(s) approved by the Bankruptcy Court.

8.    "BANKRUPTCY CODE" as used herein refers to Title I of Public Law No. 95-598, as codified in Title 11 of the United States Code, and all amendments thereto.

9.    "BANKRUPTCY COURT" (or "COURT") shall mean the United States Bankruptcy Court, for the District of Nevada (Reno, Nevada), in which the Debtor's Chapter 11 case is pending, such other court as has jurisdiction in its Chapter 11 case, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

10.    "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, including any amendments thereto, which are in effect before and as of the Confirmation Date, and thereafter during the Reorganization Case, to the extent that they are consistent with vested rights under this Plan and the Confirmation Order.

11.    "BUSINESS DAY" shall mean any day except Saturday, Sunday, or a day on which commercial banks in Washoe County, Nevada, are authorized or required by law to close.

12.    "CLAIM" shall mean:  **(a)** any right to payment from the Debtor or its Estate, including an Administrative Claim, whether or not such right is reduced to judgment, or is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and **(b)** any right to an equitable remedy for breach of performance of such breach gives rise to a right to payment from the Debtor or its Estate, including an Administrative Claim, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, secured or unsecured.

13.    "CLAIMANT" shall mean the holder of an Allowed Claim or an Allowed Administrative Claim.

14.    "CLASS" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article IV.

15.    "COMMENCEMENT DATE" (or "PETITION  DATE") shall mean the date the Debtor filed its Petition for Relief [July 18, 2023], which date shall be utilized to determine the cessation of interest on certain claims and the date of commencement of the rights of certain creditors to make claim for administrative expenses and allowances, among other rights that are determined by relation to said date.

16.    "CONFIRMATION" shall mean the entry of the Confirmation Order by the United States Bankruptcy Court.

17.    "CONFIRMATION DATE" shall mean the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

18.    "CONFIRMATION ORDER" shall mean the Order of the Bankruptcy Court

confirming this Plan pursuant to Section 1129 of the Bankruptcy Code and approving the transactions contemplated herein, which shall be in form and substance acceptable to the proponents.

19.    "CREDITOR" shall mean any entity that has a claim against the Debtor, which claim arose to or before the order for relief concerning the Debtor, including any claim that may arise under 11 U.S.C. Sections 502(f), 502(g), 502(h) and 502(I).

20.    "DEBTOR" shall mean PEAK TAHOE LLC, a Nevada limited liability company, Debtor and Debtor-in-Possession herein.

21.    "DEBTOR'S ASSETS" shall mean all assets and property of every kind, nature and description of which the Debtor or its Estate have any right, title or interest, including but not limited to: real property, personal property, including but not limited to bank deposits, instruments, credit of instruments, certificates of deposit and drafts; all executory contracts which are not and have not been rejected; all choses in action; and all claims, demands, causes of action, damages and obligations of any nature whatsoever, known or unknown in law or in equity, including, without limitation, claims or causes of action arising under the Bankruptcy Code (including, without limitation, Sections 362, 510, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code), or under any Nevada statute or regulation.

22.    "DEBTOR'S PROFESSIONALS" shall mean STEPHEN R. HARRIS, ESQ. and NORMA GUARIGLIA, ESQ. of the law firm of HARRIS LAW PRACTICE LLC, as Debtor's general bankruptcy counsel; and all other professionals retained by the Debtor with approval of the Bankruptcy Court, in accordance with Section 327 of the Bankruptcy Code.

23.    "DISCLOSURE STATEMENT" means the written DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT with respect to this Plan which is approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code.

24.    "DISPUTED CLAIM" shall mean every claim that is not an Allowed Claim or an Allowed Administrative Claim or to which the Debtor or the Unsecured Creditors' Committee or Party-in-Interest files an objection before the deadline for objection set forth in this Plan or an operative order of the Bankruptcy Court.

25.    "EFFECTIVE DATE of the PLAN" shall mean the first Business Day which is one hundred twenty (120) calendar days after all of the following have occurred (so long as they remain in effect):  **(a)** this Plan has been confirmed pursuant to the Confirmation Order and the Confirmation Order remains in full force and effect without material modification thereof; **(b)** there is not in effect any stay, injunction or restraining order or any other order of any kind which has been issued by a Court of competent jurisdiction or other governmental entity staying, restricting or prohibiting the effectuation of this Plan; and **(c)** there is not in effect any statute, rule, regulation or order enacted, promulgated or entered which is applicable to the effectuation of this Plan of which results in the consequences referred to in subsection (b) immediately above.

26.    "EQUITY HOLDINGS" shall mean the Debtor's equity members' interests retained in the PLAN, after payment of all allowed creditors' claims.

27.    "ESTATE" shall mean the Estate created in the Reorganization Case pursuant to Section 541 of the Bankruptcy Code.

28.    "EXPIRATION DATE" shall mean the last date determined by the Bankruptcy Court for the casting of Ballots, which date shall be acceptable to the proponents.

29.    "FINAL ORDER" shall mean a final order, judgment or other decree of the Bankruptcy Court or other Court of competent jurisdiction which has not been vacated, reversed, saved, modified or amended **(a)** as to which **(i)** the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for certiorari, request for review or rehearing is pending, or **(ii)** if appeal, review, rehearing or certiorari of the order has been sought, the order has been affirmed or the request for review, rehearing or certiorari has been denied, the time to seek a further appeal, review, rehearing or certiorari has expired, and **(b)** as a result of which such orders shall become final and not appealable in accordance with applicable law.

30.    "LIEN" shall mean a charge or encumbrance against or interest in property of the Debtor or the Estate to secure the payment of a debt or performance of an obligation and includes any right of setoff under Section 553 of the Bankruptcy Code.

31.    "PERSON" includes individual, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, any

governmental unit or political subdivision thereof, or other entity, and all of the respective heirs, personal representatives, successors and assigns.

32.    "PETITION DATE" shall mean July 18, 2023, the date on which a Petition for Relief under Chapter 11 of the Bankruptcy Code was filed by the Debtor commencing a reorganization case.

33.    "PLAN" means the DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION, in the form filed by the proponent and any amendments or modifications thereof or supplements thereto filed by the proponent and permitted by Article X hereof or the Bankruptcy Court.

34.    "PRIORITY CLAIM" shall mean a claim entitled to priority under Section 507(a)(2)-(8) of the Bankruptcy Code.

35.    "PROPONENT" shall mean the Debtor acting as the proponent of this Plan.

36.    "*PRO RATA* SHARE" shall mean the proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class.

37.    "PURCHASER" shall mean the transferee of a voluntary transfer.

38.    "RECORD DATE" shall mean, for purposes of voting, the date of entry by the Bankruptcy Court of the Order Approving the Disclosure Statement and, for purposes of distribution, the Confirmation Date.

39.    "REORGANIZATION CASE" shall mean the Debtor's case under Chapter 11 of the Bankruptcy Code, which is currently pending before the Bankruptcy Court as Case No. 23-50483-hlb.

40.    "REORGANIZED DEBTOR" shall mean PEAK TAHOE LLC, a Nevada limited liability company, Debtor and Debtor-in-Possession, on and after the Effective Date of the PLAN.

41.    "SECURED CLAIM" shall mean the claims of note holders, and, for purposes of this Plan, any other claim secured by a lien which is valid, perfected, enforceable and not avoidable.  If the value of the creditors' interest and the Estate's interest in the property securing a claim is not sufficient to satisfy such claim, then in accordance with Section 506 of the

Bankruptcy Code and subject to Section 1111(b) of the Bankruptcy Code, such claim shall be deemed to be an unsecured claim under this Plan to the extent of any insufficiency in the value of the creditors' interest.

42.    "UNSECURED CLAIM" shall mean any claim which is not a Secured Claim, Priority Claim, Administrative Claim, or an unclassified claim or the kind described in Section 507(a)(7) of the Bankruptcy Code.

43.    "UNSECURED CREDITORS' COMMITTEE" means the Unsecured Creditors' Committee appointed by the Bankruptcy Court in this Reorganization Case, if any, as modified by the addition or removal of members from time to time by the Bankruptcy Court.

A term used in this PLAN that is not defined in this PLAN but that is used in the Bankruptcy Code has the meaning assigned to the term

## III.

## ADMINISTRATIVE AND UNCLASSIFIED CLAIMS

### ADMINISTRATIVE CLAIMS:

All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtor's estate, all allowances, including professional fees and costs, approved by the Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on or before the Effective Date of the Plan.  The holders of these claims include the attorneys and accountants for the Debtor, unpaid post-petition accounts payable (if any), and all fees to be paid to the Office of the United States Trustee.  The estimated administrative expenses for the Debtor's reorganization proceeding are from $75,000.00 to $150,000.00, and consist of the following:

| | |
|---|---|
| $0.00 | Trustees fees that are owed the U.S. Trustee's Office for the applicable quarters of 2023 prior to the Confirmation Date [payment is anticipated to be made when due]. |
| $75,000.00 to $150,000.00 | Estimated unpaid professional fees for the Debtor's general bankruptcy attorneys, Stephen R. Harris, Esq. and Norma Guariglia, Esq., of HARRIS LAW PRACTICE LLC, calculated as of the Confirmation Date. |

$0.00       Post-petition accounts payable with [all post-petition administrative expenses are expected to be paid in full in the normal course of business prior to the Confirmation Date].

Professional fees, both legal and accounting, shall continue to accrue up through and subsequent to the Confirmation Date, with final amounts owing subject to Court approval.

<u>UNCLASSIFIED PRIORITY CLAIMS</u>:

1. **Description**. The Debtor's priority claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|---|---|---|---|
| Douglas County Treasurer | $15,384.53 | $0.00 | $15,384.53 |
| Internal Revenue Service | $10,080.00 | $10,080.00 | Disputed |
| TOTAL | $25,464.53 | $10,080.00 | $15,384.53 |

In the event any late-filed priority claims are deemed allowed before the Plan confirmation hearing, the treatment and disposition of the unclassified priority claims, now totaling $15,384.53, will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular creditor's allowed claim being paid by the Debtor. All unclassified priority creditors shall be paid 100% of their allowed claim amount, with statutory interest thereon, on or before the Effective Date of the Plan.  In the event the Debtor fails to make the payments as set forth hereinabove, the allowed priority creditors, if any, shall have the right to proceed with any administrative remedies available to them, fifteen (15) days after written notice of default has been given to the Debtor and its attorney, Stephen R. Harris, Esq.

**IV.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to Section 1122 of the Bankruptcy Code, claims against the estate have been divided into the following classifications for purposes of administration and voting on the Plan:

1. **CLASS 1 SECURED CLAIM [BSP OF FINANCE, LLC]**:

This Class consists of the allowed secured claim of BSP of Finance, LLC, in the amount of $15,506,662.28, calculated as of the Petition Date, secured by a first priority deed of trust

against the real property located at 323 Tramway Drive, Stateline, Nevada ("Property").

**2.    CLASS 2 CLAIMS [SECURED CLAIMS]:**

This Class consists of the allowed secured claims, consisting of claimants with recorded mechanic's liens against the Debtor's Property located at 323 Tramway Drive, Stateline, Nevada. The Class 2 Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Alcal Specialty Contracting, Inc. | $40,629.20 | $42,054.20 | Disputed |
| Eliot Building Company | $426,905.88 | $0.00 | $426,905.88 |
| First Service Residential (Tahoe Village Homeowner's Association | $80,754.34 | $80,262.00 | $80,262.00 |
| Kingsbury General Improvement District | $17,546.65 | $0.00 | $17,546.65 |
| Mt. Rose Hearing & Air Conditioning, Inc. | $163,558.70 | $155,915.00 | Partially Disputed |
| Richard Joseph Construction, Inc. | $251,585.80 | $0.00 | Disputed |
| Safway Services, LLC | $145,663.67 | $0.00 | $145,663.67 |
| SMC Construction Co. | $553,285.26 | $2,002,311.75 | $553,285.26 |
| Total | $1,679,929.50 | $2,280,542.95 | $1,223,663.46 |

**3.    CLASS 3 CLAIMS [GENERAL UNSECURED CLAIMS]:**

This Class consists of the allowed general unsecured claims against the Debtor. The Class 3 General Unsecured Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Balbec Capital | $127,592.34 | $0.00 | Disputed |
| California Mantle | $3,840.00 | $0.00 | $3,840.00 |
| Cheek Construction | $571.25 | $0.00 | $571.25 |
| DSS Development Solutions | $1,857.92 | $0.00 | $1,857.92 |
| Fennemore Craig, P.C. | $0.00 | $90,532.10 | Disputed |
| High Sierra Fire | $38,131.97 | $0.00 | Disputed |

| | | | |
|---|---|---|---|
| Justin Wilson Construction* | $90,165.10 | $0.00 | $90,165.10 |
| Keenan Hopkins Suder & Stowell Contractors, Inc. | $198,155.27 | $198,155.27 | $198,155.27 |
| Kemper Masonry | $3,750.00 | $0.00 | Disputed |
| Otis Elevator | $6,957.72 | $0.00 | $6,957.72 |
| Providence Electric Inc. | $72,055.00 | $0.00 | Disputed |
| Rabkin, Alan and Diane; Rabkin Family Trust | $0.00 | $unknown | Disputed |
| Sierra Pacific Windows | $123,096.37 | $123,096.37 | Disputed |
| Sierra Single Ply, Inc.* | $85,708.04 | $85,708.04 | $85,708.04 |
| Slobogin Steel & Construction LLC* | $30,629.28 | $0.00 | $30,629.28 |
| Universal Engineering (Obsidian Group Holdings LLC) | $9,178.50 | $7,626.25 | $7,626.25 |
| Vertical Iron Works | $58,074.00 | $0.00 | $58,074.00 |
| Western Water Features | $1,487.50 | $0.00 | Disputed |
| Total | $851,250.26 | $505,118.03 | $483,584.83 |

General Unsecured Claims listed hereinabove with an asterisk (*) are claimants that recorded a mechanic's lien within ninety (90) days of the Debtor's chapter 11 filing, and therefore, the lien is potentially avoidable pursuant to 11 U.S.C. §547. The Debtor listed these claims as unsecured on its filed Schedules of Assets and Liabilities (*See* ECF No. 16) and Amended Schedules of Assets and Liabilities (*See* ECF No 36).

    **4.**      **CLASS 4 EQUITY INTERESTS OF DEBTOR**:  This Class 4 consists of the Member's equity interests in PEAK TAHOE LLC, specifically: Sheba Development, LLC 99.5% member's interest and The Peak Tahoe L.L.C. 0.5% member's interest.

<h2 style="text-align:center">IX. TREATMENT OF CLASSES</h2>

    **1.**      **CLASS 1 SECURED CLAIM [BSP OF FINANCE, LLC]**: The Class 1 Allowed claim in the total amount of $15,506,662.28, calculated as of the Petition Date, shall be paid in full upon any sale of the Debtor's Property or refinance of same, whichever occurs first in time, on or before the Effective Date of the Plan. Debtor shall litigate and contest unreasonable fees, costs, or charges provided for under the parties' agreement or State statute under which such

claim arose, pursuant to §506(b). Debtor also reserves the right to contest and litigate the "second exit fee" and the minimum interest charges.  The Class 1 Allowed Secured Claim shall be paid in full by the Debtor, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date, until paid, on the later of the Effective Date, or within five business days after any order allowing the claims becomes final and unappealable. Accordingly, the Class 1 Allowed Secured Claim is unimpaired under the PLAN.

2.    **CLASS 2 CLAIMS [SECURED CLAIMS]**: The Class 2 Allowed secured claims totaling $1,223,663.46, calculated as of the Petition Date, shall be paid in full upon any sale of the Debtor's Property or refinance of same, whichever occurs first in time, on or before the Effective Date of the Plan. Debtor shall litigate and contest unreasonable fees, costs, or charges provided for under the parties' agreement or State statute under which such claim arose, pursuant to §506(b). Any Allowed Class 2 Secured Claims shall be paid in full by the Debtor, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date, until paid, on the later of the Effective Date, or within five business days after any order allowing the claims becomes final and unappealable. Accordingly, the Class 2 Allowed secured claims are unimpaired under the PLAN.

3.    **CLASS 3 CLAIMS [GENERAL UNSECURED CLAIMS]:** The Class 3 Allowed general unsecured claims totaling $483,584.83, calculated as of the Petition Date, shall be paid in full upon any sale of the Debtor's Property or refinance of same, whichever occurs first in time, on or before the Effective Date of the Plan. Debtor shall litigate and contest unreasonable fees, costs, or charges provided for under the parties' agreement or State statute under which such claim arose, pursuant to §506(b).  Any Allowed Class 3 General Unsecured Claims shall be paid in full by the Debtor, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date, until paid, on the later of the Effective Date, or within five business days after any order allowing the claims becomes final and unappealable. Accordingly, the Class 3 Allowed general unsecured

claims are <u>unimpaired</u> under the PLAN.

      **4.**   **CLASS 4 EQUITY INTERESTS OF DEBTOR:** The equity interests of the members of PEAK TAHOE LLC existing on the Petition Date shall remain unchanged. Accordingly, the Class 4 equity interests of the Debtor are <u>unimpaired</u> under the Plan.

**TREATMENT OF EXECUTORY CONTRACTS, NON-EXECUTORY CONTRACTS, UNEXPIRED LEASES AND DISPUTED CLAIMS**

**1. <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>.**

      <u>Reservation of Rights</u>. The Debtor reserves the right to assume or reject, pursuant to §365 of the Code, any executory contract or unexpired lease not assumed or rejected prior to the Confirmation Date. All executory contracts and unexpired leases not specifically assumed or rejected as of the Confirmation Date or as to which an application to reject shall not be pending on the Confirmation Date shall be deemed rejected by the Debtor. Debtor hereby assumes or rejects its leases and executory contracts as set forth below: None.

      **2. <u>DISPUTED CLAIMS</u>.**

      The bar date for objecting to claims will be sixty (60) days after the date on which the PLAN is confirmed by the Court. Through its Disbursing Agent, the Debtor will only make distributions according to the Plan and when their claims become allowed claims and interest as such terms are defined in the Plan. There are currently claims pending against the Debtor, either filed or scheduled, which are or will become Disputed Claims. As to some Disputed Claims, the Debtor disputes only the classification of the claims asserted by the holder. With respect to other Disputed Claims, the Debtor accepts the classification asserted by the holder but disputes the amount of the claim alleged by such holder. In some cases, the Debtor disputes both the asserted classification and the alleged amount. In addition, the Debtor and other parties in interest may object to certain other claims based upon equitable or contractual subordination pursuant to § 510 of the Bankruptcy Code. Specifically, such subordination claims may be asserted against any person or entity buying claim(s) for speculation and profit in Debtor's bankruptcy cases. No distribution will be made with respect to any such Disputed Claims unless and until they become allowed claims.

## VII.

## STATEMENT OF IMPAIRMENT

There are no classes impaired under the Plan. Classes 1, 2, 3 and 4 are unimpaired, and therefore are not entitled to vote.

## VIII.

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

1.    **Funding of Proposed Plan Payments**

The Debtor shall fund the proposed Plan payments from the sale, or refinance of the Debtor's Property. The Debtor is currently negotiating a Purchase and Sale Agreement with a credible financial prospective partner. The Debtor's Property has equity in excess of any purported secured claims; thus, the Debtor expects to have sufficient funds with which to make the required Plan payments, after refinance or sale/joint venture. The Debtor negotiated with a prior proposed lender, Balbec Capital LP, to obtain an extensive appraisal of the Property, which was prepared for the lender around May 2023, but not previously provided to the Debtor. *See Declaration of Benjamin Gregg, MAI in support of Opposition to Motion for Relief from the Automatic Stay Under 11 U.S.C. Under 11 U.S.C. § 362(d)(3).* The appraisal estimates the market value of the Property in "as is" condition as of April 12, 2023, at $43,300,000, and prospective market value upon completion as of May 1, 2024, at $78,400,000. *See id.* Based on this appraisal, Debtor estimates that its equity in the Property in "as is" condition exceeds $25,000,000.

2.    **Post-Confirmation Default**

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel.  The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default.  In the event such default remains uncured, the affected creditor or creditors shall be entitled to foreclose upon any collateral (if a secured creditor) or take other appropriate action.  The Debtor shall have the right to bring the issue of default before the Bankruptcy Court.  At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time.  The Bankruptcy

1  Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal

2  of the same is in the best interest of creditors.

3        3.    **Professionals' Fees**

4      After the Confirmation Date of the Plan, the Debtor and any other professional, such as

5  Debtor's general bankruptcy counsel, any special purpose counsel or accountants, will not be

6  required to apply to the Court for compensation for services rendered post-confirmation. Post-

7  confirmation compensation of the Debtor's professionals shall be at their normal rate(s) and

8  customary cost charges.

9        4.    **Distribution**

10      All cash proceeds shall be distributed in the foregoing manner except amounts necessary

11  to pay disputed claims against the Debtor in the event they are allowed, which shall be held in a

12  reserve and paid as such claims are determined by agreement between the parties or as are

13  judicially determined.

14        5.    **Taxes**

15      Unless otherwise provided in the Plan, all taxes are paid current and there are no tax liens

16  on real or personal property owned by the Debtor.

17                                       **IX.**

18       **PROVISIONS GOVERNING DISTRIBUTION AND DISCHARGE**

19        1.    <u>THE DISBURSING AGENT</u>.

20      PEAK TAHOE LLC, in its capacity as Debtor and Debtor-in-Possession, is ultimately

21  responsible for making all distributions pursuant to the Plan. To assist it in discharging those

22  responsibilities, Debtor shall select a depository institution authorized by the Court for all funds

23  which are to be sequestered for claims of creditors and ultimately distributed to creditors holding

24  allowed claims.

25        2.    <u>UNCLAIMED DISTRIBUTIONS</u>.

26      Any property to be distributed pursuant to the Plan, if not claimed by the distributee within

27  one (1) year after the payment, shall be returned to the Debtor.

28

3.      <u>EFFECT OF CONFIRMATION</u>.

Upon confirmation and performance of the Plan, PEAK TAHOE LLC shall be discharged from any debt that arose before the date of Confirmation, and any debt of a kind specified in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, to the full extent permitted by Bankruptcy Code § 1141(d).  In addition, pending execution of the Plan, and unless the Court has otherwise expressly ordered or the Plan otherwise expressly provides, all creditors and parties in interest shall be stayed from proceeding against the assets of PEAK TAHOE LLC, including stay of default proceedings.

4.      <u>EXCULPATION</u>.

Neither the Unsecured Creditors' Committee, if any, nor Debtor nor any of their respective members, officers, directors, employees, representatives, professionals or agents, will have or incur any liability to any Creditor for any act or omission in connection with or arising out of the Reorganization Case, including, without limitation, prosecuting confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for breach of fiduciary duty, gross negligence, willful misconduct or fraud. <u>Notice</u>.  Any notice described in or required by the terms of this PLAN or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the date of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Debtor, addressed to:
STEPHEN R. HARRIS, ESQ.
NORMA GUARIGLIA, ESQ.
HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd., Suite F
Reno, NV 89511

5.      <u>HEADINGS</u>.  the headings used herein are inserted for convenience only and neither constitute a portion of the PLAN nor in any manner affect the construction of the provisions of the PLAN.

6.      <u>SEVERABILITY</u>.  Should any provision of this Plan be determined to be unenforceable following the Effective date, such determination shall in no way limit or affect the

1    enforceability of any and all other provisions of this Plan.

2        7.    <u>GOVERNING LAW.</u>   Except to the extent that the Code or other applicable

3    federal law is applicable, the rights, duties and obligations arising under this Plan shall be

4    governed by and construed in accordance with the laws of the State of Nevada.

5        8.    <u>SUCCESSORS AND ASSIGNS.</u>   The rights, duties and obligations of any Person

6    named or referred to in this Plan shall be binding upon and shall inure to the benefit of the

7    successors and assigns of such person.

8        9.    <u>DESIGNATION OF MANAGERS</u>.    Jonathan Z. Mougharbel, as Trustee,

9    Managing Member of Sheba Development, LLC, Member of The Peak Tahoe, L.L.C., a Delaware

10   limited liability company, Managing Member for Peak Tahoe LLC, shall continue to serve in his

11   current position, with no compensation.

12                                    **X.**

13                    **MODIFICATION OF THE PLAN**

14       The Debtor will have the right to modify this Plan in accordance with the provisions of the

15   Bankruptcy Code and Chapter 11.  In this regard:

16       1.    In accordance with Section 1127(a) of the Bankruptcy Code and Chapter 11, and

17   11 U.S.C. § 1127(a), modification(s) of this Plan may be proposed in writing by the Debtor at any

18   time(s) before their confirmation, <u>provided that</u> the Plan, as thus modified, meets the requirements

19   of Sections 1122 and 1123 of the Bankruptcy Code and Chapter 11, 11 U.S.C. §§ 1122 and 1123,

20   and the Debtor complies with Section 1125 of the Bankruptcy Code and Chapter 11, and 11

21   U.S.C. § 1125.

22       2.    In accordance with Section 1127(b) of the Bankruptcy Code and Chapter 11, and

23   11 U.S.C. § 1127(b), this Plan also may be modified by the Debtor at any time(s) after its

24   confirmation and before its substantial consummation, <u>provided that</u> the Plan, as thus modified,

25   meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and Chapter 11, 11

26   U.S.C. §§ 1122 and 1123; and <u>provided further that</u> the circumstances then existing justify such

27   modification(s), and the Court confirms the Plan, as thus modified, under Section 1129 of the

28   Bankruptcy Code and Chapter 11, 11 U.S.C. § 1129.

3.      Any holder(s) of a claim that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Court for doing so, such holder(s) changes its previous acceptance(s) or rejection(s).

4.      Every modification of this Plan will supersede the previous version(s) of the Plan as and whenever each such modification is effective as provided in this Article X.   When superseded, the previous version(s) of the Plan will be in the nature of withdrawn or rejected settlement proposal(s), and will be null, void, and unusable by the Debtor or any other party for any purpose(s) whatsoever with respect to any of the contents of such version(s) of the Plan.

**XI.**

**DISCHARGE AND STAY CONTINUATION**

Confirmation and performance of this Plan will discharge the Debtor from any and all debts dischargeable under Section 1141(d) of the Bankruptcy Code and Chapter 11, and 11 U.S.C. § 1141(d), and will otherwise have all effects provided in such Section 1141, which are not expressly inconsistent with the provisions of this Plan.  Pending execution of this Plan and unless: (a) the Court has otherwise expressly ordered; or (b) this Plan otherwise expressly provides, all creditors will continue to be stayed from proceeding against the Debtor or its assets.

**XII.**

**RETENTION OF JURISDICTION**

Notwithstanding confirmation of this PLAN, the Court will retain jurisdiction for the following purposes, and each of them:

1.      The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

2.      The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this PLAN.

3.      The Court will retain jurisdiction to facilitate the consummation of this PLAN by

entering, consistent with the provisions of this PLAN, any further necessary or appropriate order(s) regarding the enforcement of this PLAN and any provision(s) thereof.

4.     The Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this PLAN, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtor may deem it appropriate to initiate and prosecute in aid of its reorganization.

5.     The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

6.     The Court will retain jurisdiction to enter an appropriate final decree, and any interim order(s), in any adversary proceedings which may be initiated during this Chapter 11 proceeding.

XIII.

**FEASIBILITY OF DEBTOR'S PLAN**

Debtor believes the PLAN is feasible because the equity in its Property, based on a credible appraisal, far exceeds the amount of total secured and unsecured claims, including those that are disputed.

XIV.

**LIQUIDATION ANALYSIS**

Debtor is proposing a PLAN wherein the Debtor's real property construction project will be refinanced, with enough monies available to pay all allowed creditor claims, or alternatively, a liquidating PLAN where the Property will be liquidated by the Debtor.

The PLAN must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the debtor filed a Chapter 7 petition instead.

In a Chapter 7 case, the general rule is that the debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.

Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.  A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons.  First, the Debtor's Plan proposes to pay all allowed unsecured creditors pro-rata, with interest.  Second, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all money disbursed, 10% on any amount over $5,000 but less than $1,000,000, 5% on all amounts over $1,000,000 but less than $3,000,000, and reasonable compensation not to exceed 3% on any amount over $3,000,000, thus diminishing monies available for payment to unsecured creditors.  In a Chapter 7 case, the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

Debtor's Plan proposes payment in full to all allowed creditors with postpetition interest at the contract or legal rate under NRS 17.130(2) and said creditors would not receive more from a liquidation by a Chapter 7 trustee, as a Chapter 7 trustee cannot pay allowed creditors more than their allowed claims plus interest, and may possibly pay less if the sale of the Property in a Chapter 7 is handled in a "fire sale" liquidation. A Chapter 7 trustee would also be entitled to compensation from the bankruptcy estate based on creditor distributions. Thus, if there were a liquidation of assets in Chapter 7, Debtor believes its creditors would not receive more on their claims than is being proposed in Debtor's Plan.

## XV.

## DISCLOSURE STATEMENT

When the Debtor solicits the requisite acceptance(s) of this Plan, it will be accompanied by a Disclosure Statement that will have been approved by the Court, as amended, prior to such solicitation.  The Debtor requests that all parties whose acceptance(s) of this Plan are solicited should direct their attention to the Disclosure Statement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XVI.

## **CONFIRMATION REQUEST**

PEAK TAHOE LLC, as proponent of this Plan, requests confirmation of this Plan pursuant to § 1129(a) of the Bankruptcy Code.

DATED this 22nd  day of November 2023.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

*/s/ Stephen R. Harris*

_____

Attorneys for Debtor

1

## **VERIFICATION**

2    I, JONATHAN Z. MOUGHARBEL, as Trustee, Managing Member of Debtor PEAK

3  TAHOE LLC, declare under penalty of perjury that I have read the foregoing DEBTOR'S FIRST

4  AMENDED PLAN OF REORGANIZATION, and that the contents contained therein are true

5  and correct to the best of my knowledge, information and belief.

6    DATED this 22nd day of November, 2023.

7                                                    /s/ Jonathan Z. Mougharbel

8                                                    _____

9                                                    Jonathan Z. Mougharbel, as Trustee, Managing
                                                     Member of Sheba Development, LLC, Member of

10                                                   The Peak Tahoe, L.L.C., a Delaware limited
                                                     liability company, Managing Member for Peak

11                                                   Tahoe LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28